RICKY PIERCE, Plaintiff v. TAMMY REICHARD, Defendant

No. COA02-1749

(Filed 16 March 2004)

**1. Appeal and Error— appealability—denial of motion to dismiss—judgment on the merits**

Although plaintiff landlord contends the trial court erred in an action seeking summary ejectment by denying his N.C.G.S. § 1A-1, Rule 12(b)(6) motion to dismiss defendant tenant's counterclaims seeking retroactive rent abatement for plaintiff's alleged breach of implied warranty of habitability and compensation for personal and property damage, this assignment of error is dismissed because where an unsuccessful motion to dismiss is grounded on an alleged insufficiency of the facts to state a claim for relief and the case thereupon proceeds to judgment on the merits, the unsuccessful movant may not on appeal from the final judgment seek review of the denial of the motion to dismiss.

**2. Landlord and Tenant— summary ejectment—findings of fact—severity of leaks—fair market rental value**

The trial court did not err in a residential rental dispute action by its finding of fact concerning the severity of leaks in the rental dwelling's roof and the determination of the fair market rental value, because: (1) there was competent evidence to support this finding including that defendant testified about her family's efforts to stop the leaks and the damage caused by the leaks, as well as the fact that she was forced to use one of the bedrooms to store junk; and (2) the record includes substantial testimonial and photographic evidence of the dilapidated conditions caused by the leaks in the ceiling.

**3. Costs— attorney fees—time and labor expended—skill required—customary fee—experience or ability of attorney**

The trial court erred in a residential rental dispute action by its finding of fact stating that defendant's counsel was entitled to be compensated at a rate of $125.00 per hour and she should be compensated at that rate for 33 hours, because: (1) the finding is actually a conclusion of law, and the record does not contain findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney to support this conclusion of law; (2) even if it were

PIERCE v. REICHARD

[163 N.C. App. 294 (2004)]

a finding of fact, the record does not include sufficient evidence to support a finding that the rate is reasonable for the prosecution of a case of this nature, and there was no sworn motion, affidavit, or testimony detailing counsel's time spent or hourly rate; and (3) the court's findings do not address either of the grounds for attorney fees under N.C.G.S. § 75-16.1.

**4. Costs— attorney fees on appeal—dismissal without prejudice**

Defense counsel's motion for attorney fees during appeal is dismissed without prejudice to her right to refile it in the trial court, because: (1) the matter of attorney fees is remanded to the trial court; and (2) it is more appropriate to have the trial court address the matter of attorney fees on appeal at the same time.

**5. Unfair Trade Practices— treble damages—rent abatement**

The trial court did not err by awarding defendant tenant treble damages for rent abatement on her claim of unfair and deceptive trade practices, because: (1) plaintiff landlord was aware that the roof was leaking and that repairs were necessary, yet he did not perform the necessary repairs until approximately two years after the defective condition was brought to his attention; and (2) plaintiff's actions in collecting rent after having knowledge of the uninhabitable nature of part of the house constituted unfair trade practices in violation of N.C.G.S. § 75-1.1.

**6. Landlord and Tenant— residential rental—yard part of premises warranted fit and habitable**

The trial court did not err by awarding defendant tenant $200 for damages to the windshield of her car caused by a falling tree limb on the rental property, because: (1) the yard surrounding a rental unit is deemed part of the premises and is warranted to be fit and habitable; (2) defendant informed plaintiff landlord that the tree was rotten and that it posed a danger to her and her family; and (3) plaintiff thereafter took no action to remove the defective tree from the property, and during a storm, a limb broke off the tree and damaged the windshield of defendant's car.

**7. Evidence— expert testimony—general standards of fitness and habitability of rental house**

The trial court did not abuse its discretion in a residential rental dispute action by allowing a defense witness to testify as an expert on the subject of home inspections and whether the

rental house met general standards of fitness and habitability, because: (1) for expert testimony to be admissible, the witness need only be better qualified than the finder of fact as to the subject at hand, and the witness's testimony must be helpful to the finder of fact; and (2) the defense witness was a licensed general contractor and licensed home inspector in North Carolina who has been in the construction industry for approximately 30 years and has been performing home inspections for nearly ten years.

Appeal by plaintiff from judgment entered 25 June 2002 by Judge Alma Hinton in the District Court in Halifax County. Heard in the Court of Appeals 16 October 2003.

*Jesse F. Pittard, Jr., for plaintiff-appellant.*

*Janet B. Dudley, for defendant-appellee.*

HUDSON, Judge.

Plaintiff Ricky Pierce ("Pierce") owns a house located at 107 Beech Street, Roanoke Rapids, North Carolina. On 5 April 1999, defendant Tammy Reichard ("Ms. Reichard") signed a lease in which she agreed to rent the house from Pierce for $300 per month, plus a $300 security deposit. Approximately two weeks after Ms. Reichard moved into the house, the roof over the living room began to leak after a heavy rainfall. Ms. Reichard and her husband immediately taped up the ceiling to try to stop the leaking. After a period of disputing over the leaks and other matters, Pierce filed a complaint for summary ejectment, claiming that Ms. Reichard had not paid her rent, and also sought money damages for repairs to his truck. The Magistrate ruled in favor of Pierce on both issues. Ms. Reichard appealed to district court and filed a counterclaim seeking retroactive rent abatement for Pierce's breach of the implied warranty of habitability and compensation for personal and property damage. After a bench trial, the court awarded Ms. Reichard treble damages of $14,950, property damages of $200 for a broken windshield, a $200 refund of excessive late fees, the return of her $300 security deposit and attorney's fees of $4,085. The trial court awarded Pierce $318.07 for damage to his truck. Pierce appeals. For the reasons discussed here, we affirm in part, vacate in part and remand for further proceedings.

Ms. Reichard testified in district court that she notified plaintiff of the roof leaks right away and that plaintiff said he would get to it

as soon as he could. However, Pierce's evidence tended to show that Ms. Reichard first complained about the leaks in August or September of 2000, and that he hired a repair person at that time to apply a coat of "Koolseal" to the roof. Ms. Reichard did not notice any reduction in the severity of the leaks after its application. Ms. Reichard further testified that she complained about the leaks and water damage each time she paid her rent. In August 2001, Pierce had the old roof removed and new shingles installed, but did not repair any of the water damage inside the house.

During the time it took to repair the roof a dispute arose between the parties over damage to Pierce's dump truck, sustained when it was parked in front of the house to contain roof debris. Ms. Reichard admitted that her four-year-old son may have sprayed water into the truck's open gas tank. Ms. Reichard and her husband agreed to siphon all of the gas out of the tank, and put in enough gas to get the truck to a gas station. They also agreed to reimburse Pierce for the cost of refilling the tank, but Pierce claimed that the truck broke down within a few yards of leaving the house and that the repairs cost him over $300. Pierce demanded that Ms. Reichard pay the repair bill, and she refused.

During her tenancy, Ms. Reichard complained to Pierce about a rotten tree on the property that she thought endangered her and her family. After Pierce failed to address this issue, a limb broke off the tree during a storm and damaged Ms. Reichard's car.

[1] Pierce first argues that the trial court erred by denying his 12(b)(6) motion to dismiss. For the following reasons, we overrule this assignment of error.

The issue before the trial court on a 12(b)(6) motion to dismiss is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). However, "where an unsuccessful motion to dismiss is grounded on an alleged insufficiency of the facts to state a claim for relief, and the case thereupon proceeds to judgment on the merits, the unsuccessful movant may not on appeal from the final judgment seek review of the denial of the motion to dismiss." *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 682, 340 S.E. 755, 758, *cert. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986). Here, the trial court denied Pierce's

PIERCE v. REICHARD

[163 N.C. App. 294 (2004)]

motion to dismiss Ms. Reichard's counterclaims pursuant to Rule 12(b)(6), and the case was tried on the merits. Thus, Pierce may not now seek review of the denial of his motion to dismiss.

[2] Pierce next argues that the trial court's findings of fact 20 and 28 are not supported by competent evidence.

Finding of fact 20 reads as follows:

Defendant notified Plaintiff of the severe leaks in the back bedroom and the living room during the first month of the tenancy. The leak in the bedroom rendered that room uninhabitable. Defendant and her family attempted to keep the water out of said bedroom by applying duct tape to the ceiling panels. This effort was not effective. The dwelling has two (2) bedrooms. Allowing Plaintiff until July 1, 1999 to repair the leaks, the Fair Market Rental Value of said dwelling from July 1, 1999 until March 31, 2002 was $150.00.

After reviewing the entire record, we find competent evidence to support this finding of fact. Ms. Reichard testified that about two weeks after she moved into the two bedroom house, water leaked through the ceiling in the back bedroom and portions of the living room during a strong rain storm. In an effort to stop the leaks, she and her husband put contact paper and duct tape over the leaks, and notified Pierce about the ceiling's condition. Ms. Reichard also testified that ceiling debris often fell through holes in the ceiling where the water leaked, and that when they took down the old tape to replace it, rotten wood fell from the ceiling. Water leaked into the back bedroom, causing mold on the carpets and ruining a mattress. Ms. Reichard was forced to move her daughter out of that bedroom, which she then used to store "junk."

The portion of finding of fact 20 that assigns the house a fair rental value of $150.00 per month is also supported by the evidence. The fair rental value of property may be determined "by proof of what the premises would rent for in the open market, or by evidence of other facts from which the fair rental value of the premises may be determined." *Brewington v. Loughran*, 183 N.C. 558, 565, 112 S.E. 257, 260 (1922). The "other facts" of which *Brewington* speaks include the dilapidated conditions of the premises. Here, the record includes substantial testimonial and photographic evidence of the dilapidated conditions caused by the leaks in the ceiling. This assignment of error is overruled.

**[3]** Finding of fact 28 reads as follows: "Defendant's counsel is entitled to be compensated at the rate of $125.00 per hour and she should be compensated at that rate for 33 hours." We agree that this finding is not supported by evidence in the record before us.

We note that, although this sentence in the trial court's order is denominated a finding of fact, we are not bound by the label used by the trial court. *See Wachacha v. Wachacha*, 38 N.C. App. 504, 507, 248 S.E.2d 375, 377 (1978). Finding 28 is more aptly considered a conclusion of law. Thus, we review it as such, to determine whether it is supported by sufficient findings of fact in the trial court's order. The remaining findings of fact on the issue of attorney's fees are as follows:

> 25. Defendant made a motion, based on her Counterclaims, for the Court to award attorney's fees pursuant to NCGS 75-16.1.
>
> 26. Defendant's counsel expended time and expenses for the prosecution of this action for Defendant.
>
> 27. Defendant's counsel has been licensed to practice law since 2000 and she is licensed in the state of North Carolina.

We conclude that these findings are insufficient to support the conclusion of law that defendant's attorney is "entitled to be compensated at the rate of $125.00 per hour and she should be compensated at that rate for 33 hours."

In order for us to determine if the award of attorney's fees is reasonable, the record must contain findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney. *Cotton v. Stanley*, 94 N.C. App. 367, 369, 380 S.E.2d 419, 421 (1989). Where these necessary findings are absent from the trial court's order awarding attorney's fees, we must remand the case to the trial court to take further evidence if necessary and make appropriate findings as to these facts and then make conclusions of law based thereon. *Id.* at 370, 380 S.E.2d at 421. Even if we were to accept the trial court's label of finding 28, the record does not include sufficient evidence to support a finding that Ms. Reichard's attorney spent 33 hours prosecuting this case and that $125.00 per hour is a reasonable rate for the prosecution of a case of this nature. Indeed, the record contains no sworn motion, affidavit or testimony detailing counsel's time spent or hourly rate.

PIERCE v. REICHARD

[163 N.C. App. 294 (2004)]

Further, these findings, even if supported by the evidence, are not adequate to justify an award of fees under G.S. § 75-16.1, which reads as follows:

In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that:

(1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit; or

(2) The party instituting the action knew, or should have known, the action was frivolous and malicious.

G.S. § 75-16.1 (2001). The court's findings do not address either of the grounds for attorney fees specified in the statute.

We therefore vacate finding of fact 28, conclusion of law number 10, and decretal paragraph number 5, and remand for further proceedings in accordance with this opinion.

[4] In a related issue, Ms. Reichard filed with this Court a motion for attorney's fees during appeal. In *City Finance Co. v. Boykin*, 86 N.C. App. 446, 358 S.E.2d 83 (1987), we granted defendant's motion for attorney's fees during appeal in an action based upon G.S. § 75-1.1. *Id.* at 450, 358 S.E.2d at 85. There, we noted that an award of attorney's fees is in the sound discretion of the trial court and we remanded "to the trial court for a determination of the hours spent on appeal and a reasonable hourly rate and for the entry of an appropriate attorney's fee award." *Id.*; *see also Messina v. Bell*, 158 N.C. App. 111, 581 S.E.2d 80 (2003). In accordance with *City Finance*, we could grant Ms. Reichard's motion for attorney's fees during appeal and remand for the trial court to determine the appropriate award. However, since we must remand the matter of attorney's fees to the trial court as discussed above, we deem it more appropriate to have the trial court address the matter of attorneys' fees on appeal at the same time. Thus, we dismiss the motion without prejudice to the Reichard's right to re-file it in the trial court.

[5] Plaintiff next argues that the trial court erred by awarding defendant treble damages for rent abatement on her claim of unfair and deceptive trade practices. We disagree.

A trade practice is unfair within the meaning of G.S. § 75-1.1 "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Creekside Apartments v. Poteat*, 116 N.C. App. 26, 36, 446 S.E.2d 826, 833 (citations omitted), *disc. review denied*, 338 N.C. 308, 451 S.E.2d 632 (1994). Chapter 75 applies to residential rentals because the rental of residential housing is commerce pursuant to § 75-1.1. *Love v. Pressley*, 34 N.C. App. 503, 516, 239 S.E.2d 574, 583 (1977), *cert. denied*, 294 N.C. 441, 241 S.E.2d 843 (1978).

In *Allen v. Simmons*, 99 N.C. App. 636, 394 S.E.2d 478 (1990), this Court held that a jury could find that plaintiff committed an unfair trade practice where defendant's evidence was that plaintiff leased defendant a house which contained numerous defects throughout defendant's tenancy and which rendered the house uninhabitable. *Id.* at 645, 394 S.E.2d at 484. Plaintiff failed to respond to numerous notices about the uninhabitable state of the house. Despite the condition of the house, plaintiff attempted to collect rent after defendant discontinued payments. We held that plaintiff's behavior can be considered "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* at 645, 394 S.E.2d at 484. *See also*, *Creekside Apartments*, 116 N.C. App. 26, 36, 446 S.E.2d 826, 833; *Foy v. Spinks*, 105 N.C. App. 534, 414 S.E.2d 87 (1992).

Here, Ms. Reichard testified that she complained about significant leaks in the back bedroom and living room of the house for more than two years and that Pierce continued to collect rent until the day he demanded she vacate the house. Pierce's argument that he had no notice of damage to the interior of the house is to no avail. "[W]here a tenant's evidence establishes the residential rental premises were unfit for human habitation and the landlord was aware of needed repairs but failed to honor his promises to correct the deficiencies and continued to demand rent, then such evidence would support a factual finding . . . that the landlord committed an unfair or deceptive trade practice." *Foy*, 105 N.C. App. at 540, 414 S.E.2d at 89-90. Here, Pierce was aware that the roof was leaking and that repairs were necessary, yet did not perform necessary repairs until approximately two years after the defective condition was brought to his attention. Thus,

as in *Allen* and *Foy*, the trial court correctly concluded that plaintiff's actions in collecting rent after having knowledge of the uninhabitable nature of part of the house constituted unfair trade practices and was thus a violation of G.S. § 75-1.1.

[6] Plaintiff argues next that the trial court erred by awarding defendant $200.00 for damage to the windshield of her car caused by a falling tree limb. We find no error.

By enactment of the Residential Rental Agreements Act, the General Assembly mandated that a landlord shall "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." G.S. § 42-42(a)(2). Under the Act, premises is defined as "a dwelling unit . . . and the structure of which it is a part and facilities and appurtenances therein and grounds, areas, and facilities normally held out for the use of residential tenants." Thus, the yard surrounding a rental unit are deemed part of the premises and are warranted to be fit and habitable.

Here, Ms. Reichard informed Pierce that the tree was rotten and that it posed a danger to her and her family. Thereafter, Pierce took no action to remove the defective tree from the property, and during a storm, a limb broke off the tree and damaged the windshield of defendant's car. Thus, the trial court did not err when it awarded damages for the broken windshield.

[7] Plaintiff next argues that the trial court erred by allowing a defense witness to testify to his opinion that the rental house was in substandard condition. We disagree.

N.C. R. Evid. 702(a) provides that an expert, qualified by knowledge, skill, experience, training, or education, may testify in the form of opinion if his specialized knowledge will assist the trier of fact to determine a fact in issue. The trial judge is afforded wide discretion when making a determination about the admissibility of expert testimony. *State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984). "For expert testimony to be admissible, the witness need only be better qualified than the [finder of fact] as to the subject at hand, and the witness' testimony must be helpful to the [finder of fact]." *Conner v. Continental Industrial Chemicals*, 123 N.C. App. 70, 77, 472 S.E.2d 176, 181 (1996). "A finding by the trial judge that the witness qualifies as an expert is exclusively within the discretion of the trial judge and is not to be reversed on appeal absent a complete lack of evidence to support his ruling." *Id.*

The witness here, Mr. R. J. Burke, is a licensed general contractor and licensed home inspector in North Carolina. He has been in the construction industry for approximately thirty years and has been performing home inspections for nearly ten years. Thus, we conclude the trial court did not abuse its discretion by accepting Mr. Burke as an expert on the subject of home inspections and whether the rental house met general standards of fitness and habitability.

Affirmed in part, vacated in part, and remanded.

Motion for attorney's fees under G.S. § 75-16.1 dismissed without prejudice.

Judges McGEE and CALABRIA concur.