MICHAEL DEAN, Plaintiff v. STEVEN HILL, Defendant

No. COA04-735

(Filed 19 July 2005)

1. **Landlord and Tenant— implied warranty of habitability— North Carolina Residential Rental Agreements Act—failure to pay rent after failure to make necessary repairs**

The trial court erred by granting plaintiff's motion for directed verdict (more properly a motion for involuntary dismissal under N.C.G.S. § 1A-1, Rule 41(b) since the case was tried without a jury) on defendant's counterclaim for breach of implied warranty of habitability arising out of defendant's failure to pay rent based on plaintiff's failure to provide alleged necessary

repairs to a leased mobile home, because: (1) the North Carolina Residential Rental Agreements Act provisions governing claims of implied warranty of habitability require that a landlord must make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition and shall keep all common areas of the premises in safe condition, N.C.G.S. § 42-42(a)(2) and (3); and (2) the trial court's findings of fact alone are sufficient to support defendant's claim for breach of implied warranty of habitability.

2. **Unfair Trade Practices— improper dismissal of counter-claim—residential rental agreement—collecting rent after having knowledge of uninhabitable nature**

The trial court erred by granting plaintiff's motion for directed verdict (more properly a motion for involuntary dismissal under N.C.G.S. § 1A-1, Rule 41(b) since the case was tried without a jury) on defendant's counterclaim for unfair and deceptive trade practices arising out defendant's failure to pay rent based on plaintiff's failure to provide alleged necessary repairs to a leased mobile home, and on remand the trial court must enter judgment for defendant on this issue, because: (1) residential rental agreements fall within Chapter 75 since the rental of residential housing is considered commerce pursuant to N.C.G.S. § 75-1.1; (2) defendant's evidence established that his residential rental premises were uninhabitable and that plaintiff knew that the premises needed repair, but failed to correct the defects and continued to demand payment; and (3) plaintiff's conduct of collecting rent after having knowledge of the uninhabitable nature of part of the house constituted an unfair trade practice.

3. **Landlord and Tenant— implied warranty of habitability—rent abatement**

Defendant is entitled to rent abatement for breach of the implied warranty of habitability and the case is remanded for further calculation of damages in favor of defendant.

Appeal by defendant from judgment entered 13 February 2003 by Judge Dennis J. Redwing in Gaston County District Court. Heard in the Court of Appeals 7 March 2005.

*No brief filed by plaintiff-appellee.*

*Legal Aid of North Carolina, Inc., by L. Ashley Huffstetler and Theodore O. Fillette, III, for defendant-appellant.*

DEAN v. HILL

[171 N.C. App. 479 (2005)]

JACKSON, Judge.

On 12 January 2004, the trial court granted plaintiff's motion for directed verdict and dismissed plaintiff's complaint for summary ejectment. Specifically, the trial court concluded as a matter of law that defendant surrendered the leasehold to plaintiff, that the action for summary ejectment is now moot, and that "despite the findings of fact, . . . defendant did not allege specific enough damages in his counterclaim for the court to grant relief." Defendant now appeals.

In March 2003, plaintiff and defendant entered into an oral lease agreement to rent a mobile home ("the leased premises") in Gaston County, North Carolina, with payments to be made to plaintiff on the third or fifth day of each month at the rate of three hundred and fifty dollars ($350.00) per month. Defendant paid plaintiff two hundred dollars ($200.00) as a security deposit and three hundred and fifty dollars ($350.00) for rent during the months of April, May, June, July, and August 2003. Plaintiff failed to provide necessary repairs to the leased premises notwithstanding defendant's repeated requests.

On 3 September 2003, defendant refused to pay plaintiff rent, and once again, urged plaintiff to make the necessary repairs to the leased premises. Defendant informed plaintiff that he would not make any further rent payment until all repairs were made. On 6 September 2003, defendant contacted Gaston County Code Enforcement to request an inspection of the leased premises. On 9 September 2003, plaintiff served defendant with a complaint in summary ejectment alleging that the lease period had ended and defendant was holding over. On 18 September 2003, the trial court entered judgment in favor of plaintiff and ordered defendant be removed from possession of the leased premises. On 25 September 2003, defendant filed a notice of appeal with the district court. Defendant signed a bond stating that he would pay rent to the clerk of court as it became due as he was appealing from a summary ejectment judgment and was continuing to stay on the leased premises until the appeal was heard. Accordingly, defendant paid a September rent appeal bond in the amount of one hundred and sixty-one dollars and nine cents ($161.09) to the clerk of court.

At trial, the court determined that the fair rental value of the premises in its defective condition was one hundred and fifty dollars ($150.00) per month from 1 April 2003 through 30 September 2003 and the fair market value of the premises as warranted was three hundred

and fifty dollars ($350.00) per month from 1 April 2003 through 30 September 2003.

The trial court further found that when defendant moved into the mobile home, the flooring in the kitchen and bathroom was unstable and there was a large hole located behind the refrigerator covered with wire. After defendant moved into the premises, he discovered: (1) deteriorating flooring throughout the home; (2) a large sewage leak from the neighboring property which caused a noxious smell and affected defendant's enjoyment of the premises; (3) electrical problems in the kitchen area; and (4) sparks emitting from a breaker box. All of these defects violated the Gaston County Housing Code.

Defendant asserts that the trial court erred when determining his counterclaims did not allege specific enough damages to entitle him to any relief and in granting plaintiff's motion for a directed verdict. Defendant contends that the pleadings were sufficiently detailed to entitle him to relief pursuant to a breach of the implied warranty of habitability and the North Carolina Unfair and Deceptive Trade Practices Act. N.C. Gen. Stat. § 42-42 (2003); N.C. Gen. Stat. § 75-1.1 (2003).

The North Carolina Rules of Civil Procedure, section 1A-1, Rule 41 provides, in pertinent part:

(b) Involuntary dismissal[:] . . . . [A] defendant may move for dismissal of an action or of any claim therein against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

(c) . . . . The provisions of this rule apply to the dismissal of any counterclaim, cross claim, or third-party claim.

N.C. Gen. Stat. § 1A-1, Rule 41(b) and (c). In the instant case, the trial court stated in its order that "Plaintiff's motion to dismiss the Defendant's counterclaims by directed verdict is hereby granted." However, it is well settled that a motion for a directed verdict only is proper in a jury trial. "[H]aving been tried without a jury, the proper motion by which to test the sufficiency of plaintiff's evidence to

establish a right to relief was a motion for involuntary dismissal under Rule 41(b)." *Town of Rolesville v. Perry*, 21 N.C. App. 354, 356-57, 204 S.E.2d 719, 721 (1974) (citing *Bryant v. Kelly*, 10 N.C. App. 208, 178 S.E.2d 113 (1970), *rev'd on other grounds*, 279 N.C. 123, 181 S.E.2d 438 (1971)); N.C. Gen. Stat. § 1A-1, Rule 41(b). Therefore, in the instant case, we will treat the trial court's order for directed verdict in favor of plaintiff as an order involuntarily dismissing defendant's counterclaims. *Town of Rolesville*, 21 N.C. App. at 356-57, 204 S.E.2d at 721.

The proper standard of review for a motion for an involuntary dismissal under Rule 41 is (1) whether the findings of fact by the trial court are supported by competent evidence, and (2) whether the findings of fact support the trial court's conclusions of law and its judgment. *McNeely v. Railway Co.*, 19 N.C. App. 502, 505, 199 S.E.2d 164, 167, *cert. denied*, 284 N.C. 425, 200 S.E.2d 660 (1973). We hold that there was competent evidence to support the trial court's findings of fact and that they are deemed to be conclusive on appeal. *Id.* at 505, 199 S.E.2d at 167. Having determined that the findings of fact are supported by competent evidence, we now must determine "whether the findings of fact support the conclusions of law and the judgment." *Id.* We hold that they do not.

In the instant case, the trial court determined that defendant did not state with specificity those facts that would entitle him to relief. However, the trial court's findings did not address nor list any of those facts set forth in defendant's counterclaim. After carefully examining the evidence before this Court, we believe it is important for clarification purposes to list those facts defendant set forth in his counterclaim:

The rental property was subject to the Residential Rental Agreements Act;

During all relevant times, plaintiff has had actual or apparent authority to perform the landlord's obligations under the Residential Rental Agreements Act;

The Residential Rental Agreements Act created an implied warranty of habitability for all rental dwellings in North Carolina;

Plaintiff's failure to keep the leased premises in a fit and habitable condition breached the implied warranty of habitability statute.

Defendant is entitled to actual and consequential damages, defendant's obligation to pay rent abated per N.C.G.S. § 42-41, and defendant was entitled to recover damages in the form of rent abatement calculated as the difference between the fair rental value of the premises in the unfit condition for the period which the premises was in a defective condition.

On 6 February 2004, the trial court found defendant's premises were defective and thus violated the Gaston County Housing Code. The court referenced problems with the sewage leak from neighboring property owned by plaintiff, deteriorating flooring throughout the kitchen, electrical problems with the kitchen stove, and sparks emitting from the breaker box. The trial court also found that defendant paid six months rent under the rental rate agreed to in the lease—three hundred and fifty dollars per month. The trial court's conclusions of law stated (1) defendant surrendered the leasehold to plaintiff and summary ejectment is therefore moot, and (2) despite the findings of fact, the court believed defendant did not allege specific enough damages in his counterclaim sufficient for the court to grant relief.

[1] The North Carolina Residential Rental Agreements Act provisions governing claims for implied warranty of habitability require that a landlord must "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition" and shall "[k]eep all common areas of the premises in safe condition." N.C. Gen. Stat. § 42-42(a)(2) and (3); see Creekside Apartments v. Poteat, 116 N.C. App. 26, 33, 446 S.E.2d 826, 831, disc. rev. denied, 338 N.C. 308, 451 S.E.2d 632 (1994); Allen v. Simmons, 99 N.C. App. 636, 394 S.E.2d 478 (1990). The trial court's findings of fact alone are sufficient to support defendant's claim for breach of implied warranty of habitability. Accordingly, this assignment of error is reversed and remanded for the trial court to enter judgment in favor of defendant as to defendant's counterclaim for breach of implied warranty of habitability.

[2] Defendant also contends that the trial court erred in dismissing his counterclaim for unfair and deceptive trade practices. We apply the same standard of review as we did supra. Having held the findings of fact are supported by competent evidence, we also hold that the trial court's findings of fact do not support its conclusion of law that there was insufficient evidence to show plaintiff knew the leased premises were uninhabitable and continued to demand rent payments.

North Carolina General Statutes, section 75-1.1 (2003), provides that it is unlawful to participate in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." Our courts previously have considered a trade practice to be unfair " 'when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.' " *Pierce v. Reichard*, 163 N.C. App. 294, 301, 593 S.E.2d 787, 791 (2004) (quoting *Creekside Apartments*, 116 N.C. App. at 36, 446 S.E.2d at 833). Residential rental agreements fall within Chapter 75 because "the rental of residential housing is" considered commerce pursuant to N.C. Gen. Stat. § 75-1.1." *Love v. Pressley*, 34 N.C. App. 503, 516, 239 S.E.2d 574, 583 (1977), *cert. denied*, 294 N.C. 441, 241 S.E.2d 843 (1978). In determining what type of conduct falls within the purview of Chapter 75, our Courts have stated that "[c]onduct is unfair or deceptive if it has the capacity or tendency to deceive the average consumer." *Creekside Apartments*, 116 N.C. App. at 36, 446 S.E.2d at 833 (citing *Canady v. Mann*, 107 N.C. App. 252, 260, 419 S.E.2d 597, 602 (1992)). This rule, however, does not require proof of actual deception. *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 461, 400 S.E.2d 476, 482 (1991). Whether a party has committed an unfair and deceptive trade practice will " 'depend upon the facts of each case and the impact the practice has in the marketplace.' " *Mitchell v. Linville*, 148 N.C. App. 71, 74, 557 S.E.2d 620, 623 (2001) (citing *Johnson v. Insurance Co.*, 300 N.C. 247, 262-63, 266 S.E.2d 610, 621 (1980), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 685 (1988)).

In the instant case, defendant's evidence established that his residential rental premises were uninhabitable and that plaintiff knew that the premises needed repair, but failed to correct the defects and continued to demand rent payments. This evidence supports a factual finding that plaintiff committed an unfair and deceptive trade practice. The record clearly indicates that defendant's premises were uninhabitable and violated the Gaston Housing Building Code. The trial court listed numerous defects that existed on the premises prior to and during defendant's living in those premises and incorporated those defects into its findings of facts in making its determination that the premises were uninhabitable. Defendant specifically alleged in his counterclaim that plaintiff repeatedly refused to repair any of those defects the trial court found to have existed in and about the leased premises.

"[P]laintiff's actions in collecting rent after having knowledge of the uninhabitable nature of part of the house constituted unfair trade practices and was thus a violation of [North Carolina General Statutes, section] 75-1.1." *Pierce*, 163 N.C. App. at 302, 593 S.E.2d at 792. *See Allen v. Simmons*, 99 N.C. App. 636, 645, 394 S.E.2d 478, 484 (1990) (where defendant's evidence tended to show that plaintiff leased him a residential home containing defects which rendered the home uninhabitable, a jury could find plaintiff committed an unfair trade practice); *Foy v. Spinks*, 105 N.C. App. 534, 540, 414 S.E.2d 87, 89-90 (1992) ("where a tenant's evidence establishes the residential rental premises were unfit for human habitation and the landlord was aware of the needed repairs but failed to honor his promises to correct the deficiencies and continued to demand rent, then such evidence would support a factual finding . . . that the landlord committed an unfair or deceptive trade practice"). Accordingly, we hold that plaintiff's conduct was "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Creekside Apartments*, 116 N.C. App. at 38, 446 S.E.2d at 834. Therefore, the trial court erred in dismissing defendant's counterclaim for unfair and deceptive trade practice, and on remand, it must enter judgment for defendant consistent with this holding.

[3] Defendant next asserts that absent evidence to the contrary, and after making specific findings of fact regarding the fair rental value of the leased premises as warranted and the fair rental value of the leased premises in their defective condition, the trial court should have found plaintiff liable for the difference between the fair rental value prior to defendant's moving into the leased premises and the value of the leased premises in their current state. Defendant further contends that the trial court's findings regarding the fair market value of the premises in its warranted and defective condition required the trial court to award defendant rent abatement damages. We agree.

According to North Carolina law, defendant is entitled to file suit against plaintiff requesting rent abatement for breach of implied warranty of habitability. In determining the appropriate amount due to defendant in such an action, this Court previously has stated that:

"the proper measure of damages in a rent abatement action based on a breach of the implied warranty of habitability is the difference between the fair rental value of the property in a warranted condition and the fair rental value of the property in its unwar-

**DEAN v. HILL**

[171 N.C. App. 479 (2005)]

ranted condition; provided, however, the damages do not exceed the total amount of rent paid by the tenant. Additionally, the tenant is entitled to any 'special and consequential damages alleged and proved.' "

*Cardwell v. Henry*, 145 N.C. App. 194, 196, 549 S.E.2d 587, 588 (2001) (citations omitted).

In the instant case, the trial court found that defendant took possession of the premises in late March 2003 and vacated the leased premises in early October 2003. The trial court also found that defendant paid rent to plaintiff in the amount of three hundred and fifty dollars ($350.00) per month for the months of April, May, June, July, and August 2003. Defendant then paid to the clerk of court the September rent appeal bond in the amount of one hundred and sixty one dollars and nine cents ($161.09). According to the trial court, the fair rental value of the premises in its defective condition for the months of 1 April 2003 through 30 September 2003 was one hundred and fifty dollars ($150.00) per month. The fair market value of the premises, as warranted, for the months of 1 April 2003 through 30 September 2003 was three hundred and fifty dollars ($350.00).

Having found the trial court erred in involuntarily dismissing defendant's counterclaim for breach of implied warranty, we also conclude that defendant was entitled to damages. This assignment of error is reversed and remanded for further calculation of damages in favor of defendant not inconsistent with this opinion.

After thorough review of the record, we hold that there was competent evidence to support the trial court's findings; however, those findings did not support the trial court's conclusions of law. Therefore, we reverse the trial court's judgment finding in favor of plaintiff on the issues of breach of implied warranty of habitability and unfair and deceptive trade practices. We further remand the case to the trial court for judgment to be entered in favor of defendant. The trial court shall make a determination of defendant's damages consistent with this opinion.

Reversed and remanded.

Chief Judge MARTIN and Judge HUDSON concur.