IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-562

Filed: 5 June 2018

Wake County, No. 15 CVS 17040

WFC LYNNWOOD I LLC and WFC LYNNWOOD II LLC, Delaware Limited Liability Companies, Plaintiffs

v.

LEE OF RALEIGH, INC., CHARLES L. PARK and SUN OK HELLNER, Defendants

Appeal by defendants from orders entered 27 January 2017 and 24 March 2017 by Judge R. Allen Baddour, Jr. in Wake County Superior Court. Heard in the Court of Appeals 13 December 2017.

> *Smith Moore Leatherwood LLP, by Eric A. Snider and Elizabeth Brooks Scherer, for plaintiff-appellees.*
>
> *Harris & Hilton, P.A., by Nelson G. Harris, for defendant-appellants.*

CALABRIA, Judge.

Where defendants failed to meet their burden when challenging a liquidated damages clause, the trial court did not err in awarding liquidated damages on summary judgment. Where a commercial lease with a reciprocal attorneys' fees provision was executed after the effective date of N.C. Gen. Stat. § 6-21.6, the trial court did not err in awarding attorneys' fees pursuant to that statute. Where guarantors signed a guaranty explicitly noting their liability for outstanding attorneys' fees, the trial court did not err in holding them jointly and severally liable

for attorneys' fees. Where there was insufficient evidence to support the trial court's finding that the rates charged by plaintiffs' attorneys were comparable to "the customary fee for like work," we remand for further findings. We affirm in part, vacate in part and remand in part for further findings on the amount of attorneys' fees.

## I. Factual and Procedural Background

WFC Lynnwood I LLC and WFC Lynnwood II LLC ("plaintiffs") are Delaware corporations which own the Lynnwood Collection Shopping Center ("Lynnwood Collection") in Wake County. On 26 October 2011, Lee of Raleigh, Inc. ("Lee"), through its president, Sun Ok Hellner ("Hellner"), executed a lease, agreeing to lease space in Lynnwood Collection from plaintiffs. The lease contemplated a 64-month term, to run until 30 September 2017, and as part of the agreement, Lee agreed to conduct business continuously during the term of the lease. The lease also contained a reciprocal attorneys' fees provision for the recovery of fees resulting from litigation. As part of the lease, Hellner and Charles L. Park ("Park") executed a guaranty to the lease, personally guaranteeing Lee's obligations. On 2 November 2015, Lee informed plaintiffs that it would cease operating business on 6 November 2015, and would surrender possession of the premises on 7 November 2015. Lee did so.

On 29 December 2015, plaintiffs filed a complaint against Lee, Hellner, and Park (collectively, "defendants"), alleging that Lee's abandonment of the premises

constituted a default under the lease, and that plaintiffs were entitled to liquidated damages resulting from Lee's failure to remain in operation for the duration of the lease. Plaintiffs' complaint included claims for breach of contract by Lee as tenant, and breach of contract by Hellner and Park as guarantors.

On 16 February 2016, defendants filed an answer and motion to dismiss. Defendants alleged that the liquidated damages contemplated in the lease were void, that plaintiffs failed to mitigate damages, that plaintiffs lacked certificates of authority to transact business in North Carolina, and that plaintiffs' claims were barred by estoppel. Defendants further moved to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, alleging that "Plaintiffs have failed to state claims upon which relief can be granted[.]"

On 7 October 2016, plaintiffs moved for summary judgment. On 27 January 2017, the trial court entered an order granting summary judgment in favor of plaintiffs. This order awarded plaintiffs $43,253.16, plus interest; liquidated damages of $37,685.98, plus interest; and attorneys' fees, to be subsequently determined.

On 3 February 2017, plaintiffs filed a motion for attorneys' fees, noting that the trial court had already held that fees should be awarded, and thus that the issue before the court was "not *whether* attorneys' fees and costs should be awarded to [plaintiffs]; rather, the issue is the *amount* of reasonable attorneys' fees and costs[.]"

On 24 March 2017, the trial court entered an order on attorneys' fees. The trial court recognized that the lease agreement included a reciprocal agreement for the payment of attorneys' fees, and that the guaranty agreement signed by Hellner and Park included a provision for the payment of attorneys' fees. The trial court considered the affidavit of plaintiffs' counsel, along with the range of hourly rates of attorneys in Wake County and the amount of work required by the case, and found that "the costs incurred by Plaintiffs were reasonable and necessary to enforce the Lease and Guaranty." The trial court therefore awarded attorneys' fees in the amount of $41,807.50 for costs incurred through 31 January 2017, and an additional $2,929.35 for costs incurred subsequently.

From the order granting summary judgment in favor of plaintiffs, and the order awarding attorneys' fees, defendants appeal.

## II. Summary Judgment

In their first argument, defendants contend that the trial court erred in granting summary judgment in favor of plaintiffs, specifically with respect to liquidated damages. We disagree.

### A. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of

law.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

### B. Analysis

In its order granting summary judgment in favor of plaintiffs, the trial court awarded, *inter alia*, liquidated damages in the amount of $37,685.98, plus interest. Defendants contend that this was error, because the provision of the lease establishing liquidated damages was void.

Section 20 of the lease, addressing hours and conduct of business, required defendants to operate continuously during the term of the lease, and provided that:

> In the event of a Default by Tenant of any of the conditions in this Article 20, Landlord shall have, in addition to any and all remedies herein provided, the right at its option to collect not only the Minimum Rent, but Additional Rent at the rate of one three hundred and sixty fifth (1/365th) of the amount of the annual Minimum Rent for each day Tenant is in Default or Breach of the provisions of this Article. Landlord and Tenant specifically acknowledge that the Additional Rent remedy provided for in the immediately preceding sentence is a provision for liquidated damages and is not a penalty, that the damages which Landlord is likely to suffer should Tenant breach any of the conditions in this Article are impossible to calculate at the time this Lease is executed, and because of its indefiniteness or uncertainty, the amount stipulated is a reasonable estimate of the damages which would probably be caused by a Breach or is reasonably proportionate to the [damages] which would be caused by such Breach, and the parties have specifically negotiated this provision, without which Landlord would not have entered into this Lease.

Defendants concede that they did not operate continuously for the term of the lease, thus violating Section 20, and that, if the "Additional Rent" described above is not a void provision, defendants would be liable for the amount described. However, defendants contend that this is a "double damage provision," and thus void.

"Liquidated damages are a sum which a party to a contract agrees to pay or a deposit which he agrees to forfeit, if he breaks some promise, and which, having been arrived at by a good-faith effort to estimate in advance the actual damage which would probably ensue from the breach, are legally recoverable or retainable . . . if the breach occurs." *Knutton v. Cofield*, 273 N.C. 355, 361, 160 S.E.2d 29, 34 (1968) (citation and quotation marks omitted). "A stipulated sum is for liquidated damages only (1) where the damages which the parties reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach *or* is reasonably proportionate to the damages which have actually been caused by the breach." *E. Carolina Internal Med., P.A. v. Faidas*, 149 N.C. App. 940, 945-46, 564 S.E.2d 53, 56 (citations and quotation marks omitted), *aff'd per curiam,* 356 N.C. 607, 572 S.E.2d 780 (2002). The party seeking to invalidate a liquidated damages clause bears the burden of proving the provision is invalid. *Seven Seventeen HB Charlotte Corp. v. Shrine Bowl of the Carolinas, Inc.*, 182 N.C. App. 128, 131-32, 641 S.E.2d 711, 713-14 (2007).

Defendants, challenging the liquidated damages provision, bear the burden of showing that damages were not difficult to ascertain, that the amount stipulated was not a reasonable estimate, or that the amount stipulated was not reasonably proportionate to plaintiffs' actual damages. Instead, defendants broadly describe the liquidated damages clause as "a penalty." Defendants contend that "if double rent as provided for in Landlords' form lease is a reasonable estimate of damages suffered from (a) lost percentage rent and (b) other damages resulting from failure to continuously operate; it cannot be, in a mathematical sense, a reasonable estimate of simply (b) other damages resulting from failure to continuously operate."

Defendants' argument concerning "lost percentage rent" refers to a secondary argument. Defendants contend that the sentence in Section 20 providing for "Additional Rent" should have been removed from the final draft of the agreement. Defendants cite a deposition which purports that the sentence was only in the agreement as the result of an editing error. Per this deposition, the sentence was only to remain there if percentage rent was paid under the lease. Because the lease contained no percentage rent provision, the provision of Section 20 granting "Additional Rent" should have been similarly stricken.

Even assuming *arguendo* that defendants' argument is true, and that the sentence is the result of an editing error, that fact amounts to parol evidence. "[P]arol evidence is not admissible to contradict the language of the contract." *Thompson v.*

*First Citizens Bank & Tr. Co.*, 151 N.C. App. 704, 709, 567 S.E.2d 184, 189 (2002). The language of Section 20 is plain and clear. Pursuant to that section, in the event of breach by defendants, plaintiffs are entitled to "Additional Rent." Defendants' arguments as to how that section arrived in the final document are parol evidence, and will not be considered to contradict the agreement.

Defendants' argument, then, is that the liquidated damages provision was based on both actual damages and lost percentage rent, which shows that the liquidated damages provision was not a reasonable estimate of actual damages. However, because any arguments concerning percentage rent were parol evidence, the trial court was not to consider them, nor will this Court. As such, defendants are left with no argument as to whether the liquidated damages sought by plaintiffs were not a reasonable estimate of damages, or reasonably proportionate to damages suffered. We hold, therefore, that defendants did not meet their burden with respect to the liquidated damages clause, and that the trial court did not err in enforcing it.

As an aside, defendants suggest that this is a "double damage" provision, and is therefore void as a penalty. Defendants cite to a New York decision in support of their argument. Our analysis above, however, addresses this point. To wit: Defendants bore the burden of challenging the liquidated damages provision, be it "double damage" or otherwise, and have failed to meet that burden. This argument

by defendants does not change our analysis, nor does it require additional consideration.

### III. Attorneys' Fees

In their second argument, defendants contend that the trial court erred in awarding attorneys' fees pursuant to N.C. Gen. Stat. § 6-21.6.

### A. Standard of Review

"The decision whether to award attorney's fees is within the sound discretion of the trial court and will not be overturned absent an abuse of discretion." *Egelhof v. Szulik*, 193 N.C. App. 612, 620, 668 S.E.2d 367, 373 (2008). "An abuse of discretion occurs when a decision is either manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 620-21, 668 S.E.2d at 373 (citations and quotation marks omitted).

### B. Recoverable Fees

In its order awarding attorneys' fees, the trial court held:

> The requirements of N.C. Gen. Stat. § 6-21.6 are satisfied to make the reciprocal attorneys' fee provision in the Lease valid and enforceable, because: the Lease is a business contract; the parties executed the contract by hand; and the terms and conditions concerning a possible award of attorneys' fees and legal expenses apply with equal force to Plaintiffs and Lee of Raleigh, Inc.

On appeal, defendants contend that the trial court erred in awarding attorneys' fees pursuant to that section. Defendants note that attorneys' fees are generally not

- 9 -

recoverable absent express statutory authority, and that the fees in the instant case should have been enforced under N.C. Gen. Stat. § 6-21.2, not N.C. Gen. Stat. § 6-21.6. We disagree.

The statute upon which the trial court relied provides:

> Reciprocal attorneys' fees provisions in business contracts are valid and enforceable for the recovery of reasonable attorneys' fees and expenses only if all of the parties to the business contract sign by hand the business contract.

N.C. Gen. Stat. § 6-21.6(b) (2015). By contrast, the statute upon which defendants rely provides:

> Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions:
>
> . . .
>
> (2) If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness.

N.C. Gen. Stat. § 6-21.2(2) (2015). Defendants contend that the lease agreement at issue is not a "business contract," but is rather "evidence of indebtedness," and that

the provisions of N.C. Gen. Stat. § 6-21.2 apply, rather than those of N.C. Gen. Stat. § 6-21.6. Defendants therefore contend that the amount of attorneys' fees owed were capped at 15% of the "outstanding balance" on the lease.

Defendants concede that, pursuant to N.C. Gen. Stat. § 6-21.6, "under most commercial leases entered today, a Landlord could choose to seek actual reasonable attorneys' fees under reciprocal attorneys' fee provisions such as Section 31.6 of the Lease, rather than seek a reasonable attorneys' fee, under G.S. § 6-21.2, of 15% of the outstanding balance." Defendants contend, however, that N.C. Gen. Stat. § 6-21.6 was not effective when the lease was signed.

N.C. Gen. Stat. § 6-21.6 became effective on 1 October 2011. In their brief, defendants concede that Lee executed the lease on 3 October 2011, after the effective date of the statute. The trial court likewise found that Hellner, as Lee's president, executed the lease on 3 October 2011, that Park and Hellner executed the guaranty on 3 October 2011, and that Steven Fogel, a manager for plaintiffs, executed the lease on 26 October 2011. It is therefore clear that the lease was executed after the effective date of N.C. Gen. Stat. § 6-21.6, and that Lee, as signatory to the lease, was subject to statutory attorneys' fees as contemplated by N.C. Gen. Stat. § 6-21.6.

Defendants further contend, however, that Hellner and Park, as guarantors, should not be subject to the same attorneys' fees, as the guaranty they signed lacked a reciprocal attorneys' fee provision. It is true that Park was not a party to the lease,

and Hellner only signed the lease in her capacity as a representative of Lee. It is also true that the guaranty, on its own, does not satisfy the requirements of N.C. Gen. Stat. § 6-21.6. However, this Court has held that an unconditional guaranty of charges provided for in a lease can subject a guarantor, despite not being a party to the lease itself, to liability for attorneys' fees. *See RC Assocs. v. Regency Ventures, Inc.*, 111 N.C. App. 367, 374, 432 S.E.2d 394, 398 (1993) ("[t]he language in the guaranty contract is sufficient to put a guarantor on notice that he will be liable for attorney's fees if he fails to make the guaranteed payment before the creditor finds it necessary to employ an attorney to collect the debt"); *Devereux Props., Inc. v. BBM & W, Inc.*, 114 N.C. App. 621, 625, 442 S.E.2d 555, 557 (1994) (holding that, where a guaranty agreement covered "each and every obligation of Tenant under this Lease Contract[,]" and the lease required payment of attorneys' fees, the guarantors were likewise responsible for attorneys' fees).

In the instant case, not only did the guaranty cover "each and every obligation" under the lease generally, it specifically included "all damages including, without limitation, all reasonable attorneys' fees and disbursements incurred by Landlord or caused by any such default and/or by the enforcement of the Guaranty." Certainly, if we have held that a general guaranty pertaining to "each and every obligation" under the lease subjects the guarantor to liability for attorneys' fees, one which

*explicitly* cites attorneys' fees must likewise subject the guarantor to liability for attorneys' fees.

It is clear, therefore, that the agreement was executed after the effective date of N.C. Gen. Stat. § 6-21.6, that Lee is liable for attorneys' fees as outlined in that statute and the reciprocal attorneys' fees provision of the lease, and that Hellner and Park, as guarantors pursuant to a guaranty that explicitly notes liability for attorneys' fees, are likewise jointly and severally liable with Lee for attorneys' fees. We hold that the trial court did not err in its award of attorneys' fees.

## C. Amount of Fees

Defendants also challenge the amount of attorneys' fees awarded. Defendants contend that the trial court's findings of fact are "general and conclusory, and not sufficient to enable the reviewing Court to determine whether or not the award of attorney's fees was reasonable." We agree.

"[I]n order for the appellate court to determine if the statutory award of attorneys' fees is reasonable the record must contain findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney." *Cotton v. Stanley*, 94 N.C. App. 367, 369, 380 S.E.2d 419, 421 (1989). In its order awarding attorneys' fees, the trial court found:

> 12. Counsel's Affidavit outlines the rates and hours billed for each of the timekeepers at Plaintiffs' counsel's law firm, Smith Moore Leatherwood LLP, who worked on this lawsuit.

13.     Counsel's Affidavit outlines the legal costs incurred by Plaintiffs through January 31, 2017, in connection with bringing and pursuing this lawsuit to enforce their rights under the Lease and Guaranty.

14.     The Court is aware of the range of hourly rates charged by law firms in Wake County as well as in North Carolina for litigation of business contracts like this. The Court finds that the hourly rates billed to Plaintiffs as set forth in Counsel's affidavit are fair and reasonable and conform to or are less than hourly rates charged in and around North Carolina and specifically in Wake County by firms and attorneys with comparable experience in matters of comparable complexity.

15.     The pursuit of this matter by Plaintiffs reasonably required written discovery, depositions of four fact witnesses, and a Rule 30(b)(6) deposition, preparation for trial, and summary-judgment motions practice. The Court finds that the steps taken by Plaintiffs to enforce their Lease and Guaranty were reasonable and necessary, and that the time and labor expended by Plaintiffs' counsel were reasonable.

16.     The Court finds that the costs incurred by Plaintiffs were reasonable and necessary to enforce the Lease and Guaranty.

In short, the trial court found that (1) counsel's rates were set forth in an affidavit; (2) those rates were comparable and reasonable for the work done, the subject matter of the case, and the experience of the attorneys, (3) the specific work done by counsel was reasonable and necessary, and therefore (4) the costs incurred by plaintiffs were reasonable and necessary.

Defendants contend that these findings were not supported by evidence in the record, arguing that the affidavit itself is "too vague to provide sufficient competent evidence to support the findings of fact in the Attorneys [sic] Fee Order[.]" The affidavit in question was signed by the primary attorney in the case, and included statements (1) that he was a Senior Associate with the firm, and had practiced law since 2007 and in North Carolina since 2011; (2) that he billed at a rate of $260 per hour in 2015 and 2016, and $285 per hour in 2017, as compared to his normal billing rates of $260, $275, and $315 per hour in each of those respective years; (3) that others worked on the case as well, and he included their billing rates. The attorney also provided detailed tables of the names, hours worked, and dollars billed by different attorneys, and the various expenses incurred throughout the proceedings, to calculate his total amount.

However, the affidavit offers no statement with respect to comparable rates in this field of practice. Nor did counsel offer comparable rates at the hearing on attorneys' fees. It is therefore clear that there was insufficient evidence before the trial court of "the customary fee for like work" for the trial court to make a finding on that point, and to award attorneys' fees accordingly.

We hold that, with respect to the amount of attorneys' fees awarded, the trial court erred by making a finding with respect to "the customary fee for like work," absent evidence to support such a finding. We vacate the order with respect to the

amount awarded, and remand that issue to the trial court. "On remand, the trial court shall rely upon the existing record, but may in its sole discretion receive such further evidence and further argument from the parties as it deems necessary and appropriate to comply with the instant opinion." *Heath v. Heath*, 132 N.C. App. 36, 38, 509 S.E.2d 804, 805 (1999).

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

Judge TYSON concurs.

Judge DAVIS  concurs in part and dissents in part by a separate opinion.

DAVIS, Judge, concurring in part and dissenting in part.

I concur in the result reached by the majority in granting summary judgment in favor of Plaintiffs. I respectfully dissent, however, from the portion of the majority's opinion vacating the trial court's award of attorneys' fees.

The majority holds that the trial court's findings regarding the attorneys' fees award were unsupported by competent evidence because Plaintiffs' affidavit in support of their motion for fees did not expressly contain a statement with respect to "comparable rates in the field of practice." In my view, the trial court's findings show that it exercised its authority to take judicial notice of facts relevant to that issue, which it was permitted to do. Finding of Fact No. 14 stated as follows:

> 14. The Court is aware of the range of hourly rates charged by law firms in Wake County as well as in North Carolina for litigation of business contracts like this. The Court finds that the hourly rates billed to Plaintiffs as set forth in Counsel's affidavit are fair and reasonable and conform to or are less than hourly rates charged in and around North Carolina and specifically in Wake County by firms and attorneys with comparable experience in matters of comparable complexity.

This Court has previously upheld an award of attorneys' fees pursuant to which the trial court took judicial notice of customary hourly rates. In *Simpson v. Simpson*, 209 N.C. App. 320, 703 S.E.2d 890 (2011), we held that "a district court, considering a motion for attorneys' fees . . . , is permitted, although not required, to take judicial notice of the customary hourly rates of local attorneys performing the same services and having the same experience." *Simpson*, 209 N.C. App. at 328, 703

S.E.2d at 895. Although *Simpson* involved the award of fees in connection with a child custody modification issue, I am unable to discern any valid reason why a trial court should not be permitted to similarly invoke the judicial notice doctrine in connection with an award of attorneys' fees under N.C. Gen. Stat. § 6-21.6.

I believe the findings contained in the trial court's order with regard to the award of attorneys' fees were sufficient to satisfy N.C. Gen. Stat. § 6-21.6. Accordingly, I dissent.